H. G. FISHER, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellee.

**WATERS AND WATERCOURSES:** Proximate Cause. Evidence

held insufficient to show that the acts of the defendant in con-
structing and maintaining its roadbed, were the proximate
cause of the flooding of plaintiff's lands.

*Appeal from Pottawattamie District Court.*—O. D.
WHEELER, Judge.

DECEMBER 14, 1918.

ACTION at law, to recover damages for the alleged flood-
ing of the plaintiff's land. There was a trial to a jury, and,
at the close of the evidence, the court directed a verdict for
the defendant. Plaintiff appeals.—*Affirmed.*

*Killpack & Northrop* and *H. L. Robertson,* for appel
lant.

*Saunders & Stuart* and *Hughes & Sutherland,* for ap-
pellee.

WEAVER, J.—The plaintiff owns a farm in Pottawat-
tamie County. The land is crossed by two lines of railway,
the Chicago, Rock Island & Pacific, and the Chicago, Mil-
waukee & St. Paul, running substantially north and south.
These lines are nearly parallel, and between them lies what
is spoken of in the record as "Fisher Field," owned by the
plaintiff. It is for alleged damage to this land that a re-
covery is asked. The Milwaukee right of way extends along
near the east line of plaintiff's property. Upon the east
side of the right of way, the track grade of which is elevated
several feet above the general level of the land, runs Mos-
quito Creek, flowing in a southerly direction. In a state of
nature, Mosquito Creek ran farther west into Fisher Field,
where it deflected to the east of south, and passed out near
the plaintiff's southeast corner. A smaller stream, known
as Fisher Creek, came in from the west, passing under the
track of the Rock Island road, crossing the south part of
Fisher Field, and into Mosquito Creek, near the southeast

corner of the field. In constructing its road, defendant laid its grade across the channel of Mosquito Creek, where it entered Fisher Field on the north, and turned the water south through an artificial channel on the east side of the right of way, carrying it south until it united again with the channel of Mosquito Creek, at or near plaintiff's southeast corner. To provide escape for the waters coming down Fisher Creek from the west and for such surface water as naturally tended in that direction from Fisher Field, the defendant put into its grade an open pile bridge, 100 feet in length. Except the comparatively small surface drainage or flowage from Fisher Field between the two railroads, practically all the water reaching Mosquito Creek from this direction was such as came from the west, or northwest, across the Rock Island right of way. The Rock Island grade was also built above the general level of the land, and the only openings therein for the passage of water to or in the direction of Fisher Creek and Fisher Field were two culverts, each about seven feet in diameter. Thus, in effect, the Rock Island grade diked Fisher Field on the west, except as the water from that side found its way out through the culverts above mentioned. In a state of nature, there was a gradual slope from the Rock Island grade in the direction of the flow of Fisher Creek, and when the change in the channel of Mosquito Creek to the east side of defendant's grade was effected, the lower end of the old channel continued to serve as an outlet for the waters of Fisher Creek and the adjacent lands. It appears, however, that, in the course of years, the old channel referred to has gradually filled, until now it is practically obliterated by the accumulation of rubbish, silt, and sediment, brought down or deposited by the waters seeking escape in that direction. The result of this condition has been to retard the discharge of the water, especially in times of flood, and to cause more

or less damage to plaintiff's crops. It is for this damage that plaintiff seeks to charge defendant with liability.

In his petition, after describing the general surface of the land in this vicinity, plaintiff charges that the grade of defendant's road operates as an effectual barrier against the escape of floodwater to the east, and that no openings are provided therein to aid the draininge; that the drainage through Fisher Creek has been interrupted or hindered by obstructions placed in said creek by the defendant, thereby causing it "to fill up and to grow up to willows and weeds," thus checking the flow and causing the deposit which has filled up the channel. It also charges that the bridge or opening provided by defendant in its grade for the passage of water from Fisher Creek and Fisher Field is inadequate, causing the water to dam up and set back over the field, and that, for at least three successive years, beginning with the year 1913, the flood and overflow of water so caused by the negligence of defendants have occasioned material injury to plaintiff's property.

That the old channel of Mosquito Creek, into which the waters of Fisher Creek naturally emptied, has become filled, as hereinbefore described, and that the result has been to set the water back over the field, or at least to retard its escape, is very clear; but the trouble with plaintiff's action for the recovery of damages arises when we attempt to trace the injury of which he complains to any wrongful act or neglect on the part of the defendant. It is not charged that the change in the channel of Mosquito Creek from the west to the east side of defendant's grade was wrongful, or without the consent of plaintiff or his grantors; and assuming, as we must, that it was rightfully done, then, in the absence of any showing of negligence in the execution or maintenance of such work, no right of action would accrue to plaintiff on account of the natural or necessary effect, if any, of such change on the drainage of his land. While it is

complained in the petition that defendant's track is laid on a solid grade on the east side of Fisher Field, down to the bridge or opening provided for the passage of Fisher Creek, there appears to be nothing in the testimony indicating that an opening from the field through the grade north of the bridge was a practicable or appropriate improvement. On the contrary, it would seem evident that such openings would be a detriment, rather than a benefit, to the plaintiff; for, in its natural state, as we have seen, the channel of Mosquito Creek was on the west side of the grade, with the result that the natural course of surface waters would be toward this channel, or down its course. It would seem to follow that, when the stream was diverted into the new channel on the east side, the solid grade would tend to keep the flood out of the field, rather than to increase its natural burden in that respect, while the old channel would still serve to gather the waters within the field, and conduct them along their natural outlet to the south and east.

The further allegation of the petition, that the outlet or waterway afforded by the bridge at the southeast was inadequate, is also without support. The bridge is shown by the testimony of plaintiff's own witnesses to be about 100 feet in length, resting upon piles, so set as to make 6 clear spans, of 14 or 16 feet each, and 6 feet or more above the stream—manifestly, an ample escape for even far more water than could possibly come to it through the culverts in the Rock Island grade, and from the restricted area of Fisher Field. We find no evidence that defendant or its employees or agents placed or deposited any obstructions in Fisher Creek which served to dam or set back the waters naturally escaping in that direction. There is evidence to the effect that, in times of flood, more or less floating rubbish was seen to accumulate against the piles in Mosquito Creek bridge, and that the flood waters in Mosquito Creek would set back up the course of Fisher Creek. It is a matter of

common observation and knowledge that high water in a
main stream necessarily expands and sets back into the
channels and valleys of its branches and tributaries; and
this effect is especially marked where such branches and
tributaries make their junction with the main stream in low
and flat bottom lands. In so far as the flooding of a field is
the result of such cause, the injury so done is a misfortune
for which legal liability attaches to no one; though it is,
of course, true that, if the flooding is caused or aggravat-
ed by the negligence or failure of duty of any person, he
may be held responsible in damages. It appears in this
case that, for the most part, the land between the Rock Is-
land grade and defendant's grade down to the pile bridge
is quite flat, and the channel of Fisher Creek, including that
portion of the old Mosquito Creek channel which received
the discharge of Fisher Creek, has become filled up, as we
have before said, to the general level of the adjacent land.
The inevitable result of this condition in times of flood is
the spreading of the water over the field, and its retention
for such time as is necessary for its subsidence, either by a
recession of the flood or by its absorption in the earth.
Flood waters are also, as a rule, laden with more or less
silt and other substances in suspension, which are rapidly
deposited when the waters come to a rest; and such, the
evidence shows, has been the history of Fisher Field. We
think, however, the evidence is insufficient to sustain a find-
ing that whatever injury the plaintiff has sustained from
these sources has been caused by the defendant. It is true
that several witnesses testify to seeing more or less rubbish
caught or held by the bridge piling, when the water in the
creek rose to within a few inches of the timbers spanning
the stream; but none tell us that the water east of the
bridge was lower than it appeared to be west of the bridge.
On the contrary, one of the plaintiff's witnesses says:

"I was at the Milwaukee, the next morning after the

flood.   The water west of the bridge and not under the
bridge for some distance was standing still.   Just south of
the bridge, or east, it was the same way."

In other words, the water was not dammed by the
bridge.   To a certain degree, the greater volume of water in
the main stream acted as a dam, or barrier, to the discharge
of the small stream, while the height and weight of water in
the main stream would necessarily set up a back flow in the
smaller, even in the absence of the bridge below the junc-
tion.   The witnesses, so far as they speak upon the subject,
seem to agree that the slow filling of Fisher Creek channel
began many years ago, at the junction of that creek with
the old Mosquito Creek channel, in Fisher Field, 50 feet or
more west of Mosquito Creek as it now runs.   The deposit
has accumulated, until this point is the highest between the
Rock Island grade and the bridge, and the channel is no
longer visible.   Indeed, the level of the east part of the field
generally is now at an elevation higher than a considerable
area on the west side, next to the Rock Island; so that,
when flooded by overflow or by rains, the water settling
there will not all run off.   The fair conclusion seems to be
that this point where the first and heaviest deposit has been
made is at the point where the high water setting back
from Mosquito Creek meets the flow moving down Fisher
Creek, and comes to a comparative standstill.   The gradual
growth of this accumulation has served, in some degree, to
check the flow and counterflow of the waters, and to hasten
the deposits on either side, until the conditions and changes
already described have come to pass.   So far as we can see
from the record, all these changes are fully accounted for
as having been produced or brought about by operation of
the immutable laws of nature, over which the defendant has
no control, and for the results of which it is charged with
no responsibility.   Water at large will seek its level, with-
out regard to the ownership of property which may stand in

its way. The defendant did not set these floods at liberty, nor do we think there is any evidence fairly tending to show that it diverted their destructive energies against the property alleged to be injured.

The trial court did not err in directing a verdict, and the judgment thereon is sustained.—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.